**Frank BROWN, Plaintiff,**

v.

**Omar ZAVERI, L.J.L. Family Foods Inc., d/b/a Dadeland McDonald's, and McDonald's Corp., Defendants.**

No. 00–4096–CIV.

United States District Court,
S.D. Florida.

July 19, 2001.

Reginald Alexander Mathis, Heise Markarian Foreman, Miami, FL, for Frank Brown, Plaintiff.

Todd Williams Johnson, Johnson Tomlin & Johnson, Miami, FL, for Omar Zaveri, defendant.

Neil F McGuinness, Baker & McKenzie, Miami, FL, for LJL Family Foods, Inc., defendant.

Constantine Georgalis Nickas, Wicker Smith O'Hara McCoy Et Al, Miami, FL, for McDonald's Inc, Defendant.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS L.J.L. FAMILY FOODS, INC., MCDONALD'S CORPORATION, AND OMAR ZAVERI'S MOTIONS TO DISMISS*

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Motion to Dismiss (D.E.19), filed December 15, 2001 by Defendant L.J.L. Family Foods, Inc. ("LJL"),[1] the Motion to Dismiss (D.E.21), filed December 18, 2000 by Defendant McDonald's Corp., and the Motion to Dismiss (D.E.30), filed January 30, 2001 by Defendant Omar Zaveri. Plaintiff Frank Brown filed a Consolidated Response on January 12, 2001. Defendants LJL, McDonald's Corp., and Zaveri filed Replies on January 26, 2001. Having reviewed the Motions, the Response, the Replies, and the record, the Court finds as follows.

## I. Introduction

Plaintiff sues Defendants for violating his rights under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and 42 U.S.C. § 1981 by discriminating against him on the basis of his race at the counter of a McDonald's restaurant, in Miami–Dade County, Florida. Plaintiff also sues Defendants for assault and intentional infliction of emotional distress. Lastly, Plaintiff sues Defendants LJL and McDonald's, Inc. for the negligent retention of Defendant Omar Zaveri.

## II. Factual Background

The following facts derive exclusively from the Complaint, filed October 27, 2000.

On November 19, 1999, Plaintiff, an African–American, attempted to buy lunch at a McDonald's restaurant, located inside Dadeland Mall, in Miami–Dade County, Florida. Plaintiff alleges that when he reached the front of the line, Defendant Zaveri, who was on duty that day as the restaurant's manager, refused to serve Plaintiff. According to Plaintiff, Defendant Zaveri simultaneously served the McDonald's patrons, who were not African–American.

Plaintiff also states that Defendant Zaveri subjected Plaintiff

---

1. In the Complaint, Plaintiff refers to Defendant LJL as "Dadeland McDonald's." For the purpose of this Order and any future Orders, the Court will refer to this Defendant as Defendant LJL.

to a severe and shameful display of discrimination and disregard. Specifically, after refusing to serve lunch to [Plaintiff], [Defendant] Zaveri continued to confront, berate and verbally abuse [Plaintiff]. Further, [Defendant Zaveri] ordered all other employees on duty not to serve [Plaintiff], and the employees followed their manager's instructions for fear of their jobs.

(Compl.¶ 9.) Inclusive of Defendant Zaveri's verbal use, he called Plaintiff a "nigger." (*Id.* ¶ 42.) Plaintiff then asked Defendant Zaveri why he was "doing such a thing to him," to which Defendant Zaveri responded that "it was because of [Plaintiff's] race, and that [Plaintiff] should know his place." (*Id.* ¶ 10.) Plaintiff "objected to [Defendant] Zaveri's conduct," after which Defendant Zaveri "adopted an even more aggressive approach, loudly and publicly threatening to injure [Plaintiff]." (*Id.* ¶ 11.)

As a consequence of Defendant Zaveri's actions toward Plaintiff, Plaintiff left the counter without being served. Plaintiff alleges, however, that Defendant "Zaveri's abuse did not end there," as he "left the counter and ran towards [Plaintiff], assaulting him and continuing to threaten him with physical injury." (*Id.* ¶ 12.) Plaintiff alleges that the other McDonald's employees "were forced to physically restrain [Defendant] Zaveri before any further harm could come to [Plaintiff]." (*Id.* ¶ 13.)

On October 27, 2000, Plaintiff filed the instant Complaint. In Count I, Plaintiff sues Defendants for violating his rights under 42 U.S.C. § 2000a. In Count II, Plaintiff sues Defendants for violating his rights under 42 U.S.C. § 1981. In Count III, Plaintiff sues Defendant LJL for negligent hiring/retention. In Count IV, Plaintiff sues Defendant McDonald's Corp. for negligent hiring/retention. In Count V, Plaintiff sues Defendants for assault. In Count VI, Plaintiff sues Defendants for intentional infliction of emotional distress.[2]

### III. Defendants' Arguments

As to Count I, Defendants argue that Plaintiff failed to exhaust his remedies with the Florida Commission on Human Relations ("FCHR") in order to preserve a claim under Title II of the Civil Rights Act of 1964. Defendant Zaveri also contends that the Court cannot find individual employees liable under 42 U.S.C. § 2000a.

With respect to Counts III and IV, Defendants LJL and McDonald's Corp. state that Plaintiff's negligent hiring/retention claim fails because (1) Plaintiff does not allege that Defendant LJL was aware of any of its employees being unfit; (2) there is no common law duty to train employees in "sensitivities of patrons;" and (3) Plaintiff did not allege that he sustained any physical injury or impact from Defendants' alleged conduct.

Regarding Count V, Defendants LJL and McDonald's Corp. contend that the assault claim should be dismissed against them because Defendants LJL and McDonald's Corp. are not responsible for Defendant Zaveri's alleged behavior, which he did not conduct within the scope of his employment.

Regarding Count VI, Defendants maintain that Defendant Zaveri's language did not rise to the level of "outrageous" conduct, such that an intentional infliction of emotional distress claim would be actionable.

Additionally, Defendant McDonald's Corp. argues that Plaintiff has not alleged

---

2. The Court notes that a scrivener's error in the Complaint lists the intentional infliction of emotional distress claim as Count V. (Compl. at 7.) The Court will refer to this claim as having been pled under Count VI.

that Defendant McDonald's Corp. acted as Defendant LJL's principal, in the context of this case. Defendant LJL also contends that Plaintiff's Complaint violates the "one claim per count" rule codified in Federal Rule of Civil Procedure 10(b).

## IV. Plaintiff's Arguments

With respect to Count I, Plaintiff states that Florida law cannot provide him with a remedy and thus exhaustion under Florida law is unnecessary to preserve a Title II claim in Plaintiff's case. Alternatively, Plaintiff argues that the time within which to file a claim with the FCHR should be equitably tolled.

As to Counts III and IV, Plaintiff urges the Court to accept that "common sense" indicates Defendant Zaveri's propensities were well known to Defendants LJL and McDonald's Corp, which should therefore be found liable for negligent hiring/retention.

Regarding Count V, Plaintiff maintains that Defendants LJL and McDonald's Corp. are vicariously liable for Defendant Zaveri's alleged assault. In defense of this theory, Plaintiff states that Defendant Zaveri's conduct "maintain[ed] a chain of command in the work place" because the other employees under his supervision "did not assist [Plaintiff] despite their indications that they otherwise would have attended to him from fear of losing their jobs." (Pl.'s Resp. at 10.)

Plaintiff points to paragraphs seven and fourteen through eighteen of the Complaint as allegations in support of the theory that Defendant LJL is an agent of Defendant McDonald's Corp., in the context of this case. Plaintiff also states that each Count contains only one cause of action thereby bringing the Complaint in compliance with Federal Rule of Civil Procedure 10(b).

## V. Standard of Review for a 12(b)(6) Motion to Dismiss

The Eleventh Circuit has clearly set out the standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a cause of action upon which relief can be granted. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998):

> "The standard of review for a motion to dismiss is the same for the appellate court as it was for the trial court." *Stephens v. Department of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

"On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens*, 901 F.2d at 1573 (citing *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir.1988)).

## VI. Analysis

### A. Principal–Agent

The Court finds that looking only at the Complaint, Plaintiff has established a principal-agent relationship between Defendants LJL and McDonald's Corp. In support of this finding are the following allegations, pled in the Complaint:

> [Defendant] McDonald's [Corp.] authorized and licensed [Defendant LJL] to operate a McDonald's franchise at the Dadeland Mall, in Miami–Dade County, Florida, which [Defendant] McDonald's [Corp.] controlled in every way pursuant to stringent guidelines and directives [Defendant] McDonald's, in conducting substantial and not isolated activities

within Miami–Dade County, Florida, was involved in the sale and distribution of hamburgers and other food items, the granting of franchisees, and providing supplies and equipment to franchisees for purposes of obtaining pecuniary benefit.

[Defendant] McDonald's established critical standards, policies, and guidelines to be implemented in and followed by [Defendant] Zaveri and [Defendant LJL].

[Defendant LJL] conducted business in Miami–Dade County, operating as an agent and on behalf of McDonald's and received substantial product and support services from [Defendant] McDonald's [Corp.] suppliers in Miami–Dade County, Florida, as well as nationwide.

At all material times [Defendant LJL] acted within the authority of [Defendant] McDonald's [Corp.] and, as its agent, was entrusted with the rights and duties inherent in such a relationship.

At all material times, [Defendant] Zaveri was acting within the scope of the employment with [Defendant LJL] and [Defendant] McDonald's [Corp.], in the operation and management of McDonald's.

(Compl. ¶¶ 7 & 14–18.) Defendant McDonald's Corp. urges the Court to construe the instant Motion as a motion for summary judgment in order to review Geneace Williams' Affidavit, which Defendant McDonald's Corp. has submitted. At this time, however, the Court postpones review of the Affidavit, until such time that Defendant McDonald's Corp. files a Motion for Summary Judgment. Therefore, for purposes of reviewing the instant Motions to Dismiss, the Court considers Defendant LJL to be an agent of Defendant McDonald's Corp. in the context of this case.

**B. Count I—Title II of the Civil Rights Act of 1964**

The Court must determine whether Plaintiff failed to exhaust his remedies under Title II of the Civil Rights Act of 1964. The Court's discussion begins with 42 U.S.C. § 2000a–3(c), which provides in pertinent part,

> In the case of an alleged act or practice prohibited by this subchapter which occurs in the state, or political subdivision of a state, which has a state or local law prohibiting such act or practice and establishing or authorizing a state or local authority to grant or seek relief from such practice or such or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under Subsection (a) of this Section before the expiration of 30 days after written notice of such alleged act or practice has been given to the appropriate state or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of state or local enforcement proceedings.

The Sixth, Seventh, and Tenth Circuits have held that § 2000a–3(c) requires Title II plaintiffs to give notice to state or local authorities when (i) a state or local law prohibits the type of discrimination, covered within Title II, and (ii) the state or local authority is authorized to grant or seek relief from such discrimination. *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 242 (6th Cir.1990); *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144–45 (7th Cir.1993) (citing *Hornick v. Noyes*, 708 F.2d 321, 323 (7th Cir.1983), *cert. denied*, 465 U.S. 1031, 104 S.Ct. 1295, 79 L.Ed.2d 696 (1984)); *Mistretta v. Sandia Corp.*, 639 F.2d 588, 594 (10th Cir.1980) (citing *Harris v. Ericson*, 457 F.2d 765,

767 (10th Cir.1972)). The Eleventh Circuit has apparently yet to review this issue.

District courts, however, have had occasion to review this requirement. In *Robinson v. Power Pizza, Inc.*, 993 F.Supp. 1458, 1460–61 (M.D.Fla.1998), the court held that Title II plaintiffs were not required to give notice to the FCHR because those plaintiffs were seeking a preliminary injunction that demanded immediate attention, which the FCHR could not afford to the plaintiffs. As the court in *Hill v. Shell Oil Co.*, 78 F.Supp.2d 764, 770 (N.D.Ill. 1999), noted, the "court's holding in *Robinson* ... was based on unique concerns of urgency," which the *Hill* court found did not exist in the facts before it.

■ This Court likewise distinguishes *Robinson* from the facts *sub judice*. While Plaintiff is seeking injunctive relief under Title II, he is not seeking a preliminary injunction and has not alleged any sense of urgency. A mere prayer for injunctive relief, furthermore, is insufficient to escape the requirements of § 2000a–3(c) in Florida. The FCHR is completely capable of investigating a request for injunctive relief and shall be given the opportunity to do so, in the absence of alleged urgency, which the Court finds does not exist here. Plaintiff concedes that he has failed to notify the FCHR of his claim, and the 365–day period within which Plaintiff has to file such a claim with the FCHR has expired. Plaintiff's Title II claim is therefore dismissed for failure to exhaust remedies under the FCHR.

Moreover, the Court finds that even if the 365–day requirement were subject to equitable tolling, the grounds for equitable tolling which Plaintiff purports are baseless. Plaintiff argues that Defendants misled Plaintiff by failing to alert Plaintiff of his requirement to notify the FCHR, and that this failure should toll the period. The Court rejects this argument. At no point during the course of Title II litiga-

tion is the defendant obligated to notify the plaintiff of the plaintiff's duties under the law. Count I is dismissed.

## C. Counts III & IV—Negligent Hiring/Retention

■ The Court must determine whether Plaintiff has stated a claim of negligent hiring/retention upon which relief may be granted. The parties do not dispute that Florida law governs this claim. Under Florida law, an employer is liable for negligent hiring/retention, only when that employer

> has somehow been responsible for bringing a third person into contact with an employee, whom the employer knows or should have known is predisposed to committing a wrong under circumstances that create an opportunity of enticement to commit such a wrong, should the law impose liability on the employer.

*Gillis v. Sports Authority, Inc.*, 123 F.Supp.2d 611, 617 (S.D.Fla.2000) (citing *Garcia v. Duffy*, 492 So.2d 435 (Fla. 2d DCA 1986)). The *Gillis* court continued, "In negligent hiring or retention cases, the ultimate question of liability to be decided is 'whether it was reasonable for an employer to permit an employee to perform his job in light of information about the employee which employer should have known.'" *Gillis*, 123 F.Supp.2d at 617 (quoting *Sullivan v. Lake Region Yacht & Country Club*, No. 97–1464–CIV–T–17A, 1997 WL 689799, *3 (M.D.Fla.1997) (citing *Tallahassee Furniture Co., Inc. v. Harrison*, 583 So.2d 744 (Fla.App.1st DCA 1991))).

■ Plaintiff does not dispute that Defendant LJL's actual or constructive knowledge of Defendant Zaveri's predisposition to commit a wrong, similar to the wrongs alleged in the Complaint, is a *sine qua non* of finding Defendant LJL liable

for the negligent retention of Defendant Zaveri. The Court finds however that Plaintiff has not alleged such actual or constructive knowledge on the part of Defendant LJL in the Complaint and further finds that "common sense" cannot substitute for the absence of allegations within the Complaint. Plaintiff's negligent retention claim against Defendant LJL is thus dismissed for failure to state a claim upon which relief may be granted.

### D. Count V—Assault

Next, the Court examines whether Plaintiff has failed to state a claim of assault against Defendants LJL and McDonald's Corp. upon which relief may be granted.

■ Plaintiff is suing Defendants LJL and McDonald's Corp. under a theory of vicarious liability for Defendant Zaveri's alleged conduct. Plaintiff must show that Defendant Zaveri's conduct was within the scope of his employment, which is established if: "(1) the conduct is of the kind he was employed to perform; (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed; and (3) the conduct is activated at least in part to serve the employer." *Degitz v. Southern Mgmt. Servs., Inc.,* 996 F.Supp. 1451, 1462 (M.D.Fla.1998) (citations omitted). Elaborating upon the third prong of this test, another Middle District of Florida court stated,

> To recover under a theory of vicarious liability such as actual or apparent agency, it must be shown that the agent or apparent agent's conduct was motivated, at least in part, by the purpose of serving the employer. It is entirely clear that responsibility for the intentional wrongful acts of a servant-employee may be visited upon his master-employer under the doctrine of *respondeat superior* only when the conduct in some

way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own.

*Ayers v. Wal–Mart Stores,* 941 F.Supp. 1163, 1169 (M.D.Fla.1996) (emphasis in original) (citing *Tallahassee Furniture v. Harrison,* 583 So.2d 744, 758 (Fla. 1st DCA 1991), *rev. denied,* 595 So.2d 558 (Fla.1992) (citation omitted); *Nazareth v. Herndon Ambulance Service, Inc.,* 467 So.2d 1076 (Fla. 5th DCA), *rev. denied,* 478 So.2d 53 (Fla.1985)). The *Ayers* court looked specifically at the issue of vicarious liability for assault and found,

> "An act of a servant is not within the scope of employment if it is done without the intention to perform it as a part of or incident to a service on account of which he is employed." ... When "an assault is purely personal to the servant, having no real connection with the master's business, the doctrine of respondeat superior is inapplicable to fasten liability upon the master."

*Ayers,* 941 F.Supp. at 1169 (quoting *Tallahassee Furniture,* 583 So.2d at 758) (Restatement (Second) of Agency § 235 (1958)).

The *Ayers* case came before the court upon a motion for summary judgment, which the court granted with respect to the plaintiff's assault claim after finding no factual issue as to whether the employee's "tortious actions 'in some way furthered the interests' of Wal–Mart or were 'at least motivated by a purpose to serve' Wal–Mart's interests, rather than [the employee's] personal interests." *Ayers,* 941 F.Supp. at 1169 (quoting *Tallahassee Furniture,* 583 So.2d at 758). In support of this finding, the *Ayers* court explained that Ayers, the plaintiff, "does not dispute that Wal–Mart's purposes is to sell retail goods to the public. Ayers alleged that [the employee] touched her, hugged her, and

made sexual comments, without her consent. However, Ayers does not sufficiently allege that [the employee's] actions were in furtherance of Wal-Mart's interest in selling goods." *Ayers,* 941 F.Supp. at 1169.

Such is the situation *sub judice.* The purpose of a McDonald's restaurant is to sell retail goods, specifically food and beverages, to the public. Plaintiff alleges that Defendant Zaveri threatened to cause physical harm to Plaintiff; yet he does not sufficiently allege that Defendant Zaveri's actions were in furtherance of Defendants McDonald's Corp. and LJL's interest in selling food and beverages.

■ In his Response, Plaintiff argues that Defendant Zaveri's conduct "maintain[ed] a chain of command in the work place" because the other employees under his supervision "did not assist [Plaintiff] despite their indications that they otherwise would have attended to him from fear of losing their jobs." (Pl.'s Resp. at 10.) The Court rejects this argument. Even when construing the allegations of fact within the Complaint in the Plaintiff's favor, the Court cannot reasonably infer from the Complaint that the other employees were complicit in Defendant Zaveri's unilateral threat to cause physical harm to Plaintiff. Moreover, were the other employees to "assist" Plaintiff, such assistance would not guarantee preclusion of the alleged assault. In any event, a latent fear of reprisal from Defendant Zaveri on the part of the other employees is not alleged within the Complaint. To the contrary, Plaintiff alleges that these employees ultimately restrained Defendant Zaveri from causing further harm to Plaintiff. (Compl.¶ 13.) Count V as to Defendants LJL and McDonald's Corp. is dismissed for failure to state a claim upon which relief may be granted.

### E. Count VI—Intentional Infliction of Emotional Distress

The Court discusses whether Count VI, alleging intentional infliction of emotional distress, should be dismissed.

In Florida, intentional infliction of emotional distress liability "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Vamper v. United Parcel Serv., Inc.,* 14 F.Supp.2d 1301, 1306 (S.D.Fla.1998) (quoting *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278–79 (Fla.1985) (citation omitted)). The Florida courts

> have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Williams v. City of Minneola,* 575 So.2d 683, 691 (Fla. 5th DCA 1991). " 'Outrageousness' refers to the attitude of society toward what is done." *Id.* at 691 n. 6.

Defendants rely on employment cases, such as *Vamper,* 14 F.Supp.2d at 1306–07,

finding that, "in the context of employment discrimination," the plaintiff's allegations did not rise to the requisite level of "relentless physical and verbal harassment necessary to state claim for intentional infliction of emotional distress," where the employer

> fabricated a reckless driving charge in an attempt to terminate him; ... [UPS's Hialeah Center Business Manager] told a false story about Plaintiff to another employee and referred to Plaintiff as a "nigger" in Spanish; ... [Plaintiff] did not receive pay and bonuses other drivers received; ... [Plaintiff] was threatened with termination; ... [Plaintiff] was unjustifiably suspended and demoted; and ... [Plaintiff's supervisor] struck Plaintiff from behind on the ankle.

*Vamper*, 14 F.Supp.2d at 1306; *see also Lay v. Roux Labs., Inc.*, 379 So.2d 451, 452 (Fla. 1st DCA 1980) (finding allegations that co-employee threatened plaintiff with loss of job; directed humiliating language, vicious verbal threats, and racial epithets at her; and called her "nigger" when argument arose concerning parking space were "extremely reprehensible," but did not reach level of "outrageousness and atrociousness" necessary to constitute intentional infliction of emotional distress).

 In light of this standard under Florida law and the cases adherent to it, the Court finds that while Plaintiff alleges in his Complaint that Defendant Zaveri's "threatening of [Plaintiff] and calling him a 'nigger' was outrageous, malicious, and willful," (Compl.¶ 42) this legal conclusion is insufficient to support a claim for intentional infliction of emotional distress. While the Court in no way condones the actions, alleged by Plaintiff in the Complaint, the Court finds that they do not rise to the level of "outrageousness" necessary to state a claim for intentional infliction of emotional distress, upon which relief may be granted. Count VI is dismissed.

### F. Rule 10(b)

The Court finds that the Complaint is compliant with Federal Rule of Civil Procedure 10(b), which provides in pertinent part that

> [a]ll averments of claim ... shall be made in separate paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.... Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth.

Each Count contains only one cause of action and places Defendants on sufficient notice of the allegations against them.

Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. The Motions to Dismiss (D.E. 19, 21 & 30) are **GRANTED IN PART AND DENIED IN PART.**

2. Counts I, III, IV, and VI are **DISMISSED.**

3. Count V is **DISMISSED** as to Defendants LJL and McDonald's Corp.

4. Counts II remains. Count V as to Defendant Zaveri remains.